Submitted on record and briefs June 24, reversed and remanded with instructions August 24, 1988

SHEIBANI,
*Appellant,*

*v.*

NELSON,
*Defendant,*

*and*

PRASSAS,
*Respondent.*

(A8707-04507; CA A45924)

759 P2d 1135

David R. Nepom, Portland, submitted the briefs for appellant.

Patrick R. Berg, Portland, submitted the brief for respondent.

Before Warden, Presiding Judge, and Deits and Graber, Judges.

GRABER, J.

## GRABER, J.

In this breach of contract case, the jury found for plaintiff. The trial court granted defendant's motion for a judgment notwithstanding the verdict on the basis that defendant[1] was not a guarantor of Nelson's debt. Plaintiff appeals from the resulting judgment that was entered against him. We reverse and reinstate the jury verdict.

When reviewing a judgment notwithstanding the verdict, "[o]ur task is to review the record to ascertain whether, viewing the evidence in the light most favorable to plaintiff, there is any evidence to support the jury verdict; if so, it must be reinstated." *Taylor v. Willamette Tractor Parts and Equipment Company,* 68 Or App 452, 453, 681 P2d 804, *rev den* 297 Or 547 (1984). We state the facts in accordance with that standard.

In 1985, plaintiff was seeking a buyer for his financially troubled Dunkin' Donuts store. Plaintiff was given defendant's name as a potential buyer for his franchise. Defendant owns two Dunkin' Donuts franchises and had bought and sold ten others in the past. Plaintiff contacted defendant and they had discussions about the possibility of becoming partners. During the time those conversations were going on, plaintiff received notice from Dunkin' Donuts of America, Inc., (DDA) that his lease and franchise agreements were to be terminated. Plaintiff then offered defendant full ownership of the store if defendant would assume all of its liabilities. Defendant agreed, and sent people to work in the store, including Nelson. Defendant and Nelson had previously owned a Dunkin' Donuts franchise as partners.

After the oral agreement was made, however, defendant asked that the written contract to sell the store show Nelson, not defendant, as the buyer.[2] Plaintiff agreed. Tidd, plaintiff's attorney at the time, read the entire agreement to defendant over the telephone. Nelson independently reviewed the contract, which he alone signed as buyer. Defendant told Tidd that he would handle the transfer procedure with DDA.

---

[1] In this opinion, "defendant" refers to George Prassas. Plaintiff took a default judgment against Jay Nelson, who did not appeal.

[2] The typed portion of the agreement also lists Etta Nelson as a buyer, but she did not sign the agreement and is not a defendant.

Nelson, however, took possession of the store. Neither he nor defendant paid obligations assumed under the purchase agreement with plaintiff. DDA took over the store and held plaintiff liable, because ownership had not been transferred in accordance with DDA requirements.

Defendant argues that he gave no oral guarantee to plaintiff and that, even if he had, the Statute of Frauds makes it unenforceable. *See* ORS 41.580(2).[3] Plaintiff asserts that there was evidence from which the jury could find both that defendant made an oral guarantee and that defendant's main purpose was to serve his own business advantage, thus taking the agreement outside the Statute of Frauds. *White Stag Mfg. Co. v. Wind Surfing, Inc.,* 67 Or App 459, 466, 679 P2d 312 (1984).[4]

Plaintiff testified that defendant promised to pay Nelson's debt under the purchase agreement if Nelson did not.[5] That is evidence of an oral guarantee. It is supported by a

---

[3] ORS 41.580 provides, in pertinent part:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"* * * * *

"(2) An agreement to answer for the debt, default or miscarriage of another."

[4] The jury found, in relevant part:

"*Question 1:* Was there in fact an [*sic*] contract whereby defendant agreed to guarantee Jay Nelson's obligations under the contract of sale of plaintiff's business?

"ANSWER: YES __X__ NO____

"*Question 2:* If defendant in fact promised to guarantee Nelson's obligations, was defendant's main purpose to serve his own economic advantage?

"ANSWER: YES __X__ NO____"

[5] Plaintiff testified:

"Q And what did [defendant] say with regard to who would pay the debt?

"A [Defendant] said, 'I will pay the debt. Mr. Nelson doesn't pay. I will do your — you are dealing with me.'

"Q And how many times did he say this?

"A I believe three times, three times. It would be two times that he said that, 'Don't worry, I will pay if he doesn't pay.' And first time he said that, 'I am buying this store. This is my store,' and I consider myself the person as his employee.

"* * * * *

"Q And did you, in fact, transfer the business to Mr. Nelson?

"A Yes, sir."

letter from Tidd to DDA's counsel, which referred to defendant as Nelson's "backer." Plaintiff also testified that defendant referred to the store as "his."[6] Tidd similarly testified that defendant labeled the store as "his," even after the contract with Nelson had been signed.

The trial court held that the only possible inference to be drawn from plaintiff's testimony is that defendant was the buyer and Nelson was his agent.[7] However, it is also possible to draw the inference that defendant changed his mind about direct involvement in the store but retained a financial stake in the franchise as an investor or silent partner of Nelson. Plaintiff testified that defendant *first* told him, "I am buying this store. This is my store." *Later,* defendant twice said, "Don't worry, I will pay if [Nelson] doesn't pay," and then Nelson alone signed the contract with plaintiff. Evidence that defendant nonetheless considered the franchise to be his, considered together with evidence that defendant had bought and sold other Dunkin' Donuts stores and that defendant and Nelson had been partners in another Dunkin' Donuts franchise, is sufficient to support a finding that defendant was a guarantor who had a substantial, personal pecuniary interest in the franchise and, therefore, that defendant's main purpose in making the guarantee was for his own economic advantage.[8]

It is apparent from its opinion that the trial court weighed the evidence and judged credibility, tasks that properly belong to the jury. Although the court referred to plaintiff's testimony as "lip service to a guarantee," the jury was entitled to believe that testimony. The court further wrote that plaintiff's testimony was so "disjointed," "incoherent," and "inherently self-contradictory" as to be unworthy of any weight whatsoever. *See Forester v. Knapple,* 226 Or 327, 360

---

[6] Plaintiff testified:

"Q And what did [defendant] say with regard to whose store it would be?

"A [Defendant's] store, and they were sending to [defendant], as a matter of fact. I talked to him."

[7] Defendant argues that the complaint was defective for failure to allege an agency relationship between defendant and Nelson. That argument assumes the correctness of the trial court's holding that the evidence would sustain a claim only under an agency theory, but it does not address the theory of guarantee that plaintiff pleaded.

[8] The trial court held that, if plaintiff were believed, defendant was a principal debtor. Defendant contended at trial that his role was to assist Nelson on account of their friendship and Nelson's limited sophistication.

P2d 311 (1961). The jury was entitled to believe "disjointed" or "incoherent" testimony. Plaintiff's testimony was not fatally contradictory, because it could support an inference that defendant changed his role from a proposed principal to Nelson's guarantor.

Reversed and remanded with instructions to reinstate verdict for plaintiff and to enter judgment thereon.